## OXFORD IRON CO. vs. SPRADLEY.

[ACTION ON PROMISSORY NOTE.]

1. *Section 2682 of Revised Code; to what applies.*—Section 2682 of the Revised Code applies to written instruments, the foundation of the suit, purporting to be made by a corporation defendant, its agent or attorney, in like manner as it applies to instruments purporting to be made

by natural persons, &c., and must be received in evidence without proof of the execution, unless the execution thereof is denied by plea verified by affidavit.

2. *Manufacturing and other corporations; what powers have.*—Manufacturing and other like corporations in this State, unless expressly prohibited by their charters, may borrow money, and make and receive promissory notes and bills of exchange, in carrying on their lawful business. The presumption is in favor of the validity of notes and bills of exchange made by and to such corporations, and that they are made in the lawful course of their business, until the contrary is shown.

3. *Promissory note; what void.*—A promissory note by an iron company for money or other thing loaned to it, to be used by the company in erecting iron works and making iron for the late Confederate government for military purposes in carrying on the late rebellion against the United States, if known to the lender at the time of the loan, is illegal, against public policy, and no action can be maintained on it.

4. *Corporation aggregate; what, admits corporate character of.*—Where the defendant is sued as a corporation aggregate, the appointment of an attorney, and an appearance entered by him, is an admission of record of the corporate character of the defendant.

APPEAL from Circuit Court of Calhoun.
Tried before Hon. WM. L. WHITLOCK.

THIS was an action commenced by appellee against the appellant on promissory note, a copy of which is as follows:

"$1540.00.　　　　　　　　OXFORD IRON WORKS,
　　　　　　　　　　　　　　　　April 7th, 1863.

"On demand we promise to pay to M. D. C. Spradley, or order, one thousand five hundred and forty dollars, for value received, with interest at the rate of eight per cent. per annum.

　　　　　　　　　　"OXFORD IRON COMPANY,
　　　　　" Per RICHARD L. CAMPBELL, President."

The complaint is in the form given in the Revised Code for " action on promissory note by payee against maker," and states that the note was made by the defendant. Service having been duly executed, the defendant appeared by attorney, and pleaded in short by consent—

" 1st. *Nul tiel* corporation.

" 2d. The note sued on was given for an illegal consideration.

"3d. The note sued on was given in consideration of one thousand five hundred and forty dollars of Confederate treasury-notes loaned by plaintiff to defendant, and without any other consideration, and said treasury-notes were not of any value when loaned by plaintiff to defendant, and were not of any value when plaintiff's supposed cause of action accrued on said note.

"4th. Failure of consideration.

"5th. *Non assumpsit.*"

No replication was filed by the plaintiff, so far as the record shows, and no further notice seems to have been taken of the pleas, although the judgment entry states that the parties came by their attorneys, and issue being joined, thereupon came a jury," &c.

The plaintiff offered in evidence the note, and the defendant objected to its admission—1st. Because the note on its face is the individual note of R. L. Campbell, and not the note of defendant. 2d. Because the execution of the note is not proved. 3d. Because the agency or official relation of Campbell to defendant was not proved. 4th. Because it is not shown that defendant had the capacity to contract, or Campbell the power to bind it.

The court overruled these objections, and defendant excepted. The plaintiff then read the note in evidence to the jury, and there rested his case.

It appears from the bill of exceptions that the plaintiff desired one Knox to get employment for him with the Oxford Iron Company, as he would thus be exempt from service in the Confederate army; that he went into the employment of the company in November, 1862, before the works had been so far completed as to make iron, and remained until the close of the war in 1865; that the company commenced turning out iron in June, 1863; that at the time he went into the service of the company, plaintiff had been informed that defendant was erecting its works to make iron for the Confederate government, to aid in carrying on the war then being waged against the United States; that it was generally known among the employees and persons in the county and neighborhood, that the

company was building its works to furnish iron to the Confederate government for use in its military operations. It further appeared that plaintiff held a note on one Harralson, which the president of the company told plaintiff the company would take, collect, and use the money so collected in defraying the expenses of the company, and give the company's note therefor. The plaintiff assented to this, sent Harralson's note to Selma for collection, and shortly afterwards received therefor the note sued on, which was executed by Campbell in plaintiff's presence. The company used the money so collected in paying its liabilities and defraying its expenses. The proof was conflicting as to whether the note sued on was given for the note on Harralson, or for the Confederate money collected on it.

The court, against the objection of the defendant, permitted the clerk to the judge of probate of the county of Calhoun to testify that he was clerk in 1862 and 1863, and as such recorded the articles of association between Woodson, Knox and others to form a corporation called the Oxford Iron Company, for the manufacture of iron. The articles, when recorded, were taken from the office by a person who was not remembered. The record was destroyed 15th July, 1864, by fire, and witness remembers nothing of their contents. The books of the company were all destroyed by the United States forces, who burnt the works in 1865, except one book produced in court. The defendant waived notice to produce the articles of association, but objected to and excepted to the admission of the evidence in relation to them.

Among other charges asked, the defendant asked the following:

"If the jury believe from the evidence that Woodson, Knox and others executed and acknowledged, and caused to be recorded in the probate court of Calhoun county, articles of association or agreement for the promotion of a corporation by the name of the Oxford Iron Company, for the manufacture of iron, which was done in the last of the year 1862, or early in 1863, that this did not create a corporation."

This charge the court gave with the qualification—"But if the jury believe that said corporation went into operation and manufactured iron, it would be a corporation."

To the refusal to charge as requested, and to the giving of the charge as qualified, the defendant excepted.

"5. That if the jury believe that the plaintiff loaned money or a note on Harralson to the defendant, with the knowledge that the proceeds of the note or money was desired by the defendant to enable it to erect iron works to manufacture iron for the Confederate government, to be used for military purposes by the Confederate government in the late war between the United States and the Confederate States, and the note sued on is given in consideration of the money or note so loaned by the plaintiff to the defendant, then the plaintiff can not recover in this action."

"6. That if the jury believe that the plaintiff let the defendant have money, or a note on a third person, with a knowledge that such money or note, or the proceeds of the note, was obtained by the defendant to enable the defendant to make iron for the Confederate government to be used for military purposes in the late war between the United States and the Confederate States, and the said money or note was so used in making iron, and the consideration of the note sued on is money or a note on a third person so obtained by the defendant of the plaintiff, then the plaintiff can not recover in this action."

The court refused to give either of these charges, and the defendant excepted.

The jury found a verdict in favor of the plaintiff for $1,788.71, and defendant appeals, and here assigns among other errors—

1st. The admission of the evidence in relation to the articles of association or agreement for the formation of the corporation.

2d. The refusal to give the 5th and 6th charges asked by the defendant.

JOHN T. HEFLIN, for appellant.

(Appellant's brief did not come into Reporter's hands.)

FOSTER & FORNEY, for appellee.—1. There was no plea verified by affidavit denying the execution of the note sued on. It purported to be made by the defendant, per Campbell, president of the company, and must therefore be received as evidence of the debt sued upon, and that it was made on sufficient consideration.—*Ala. & Flor. Railroad v. Watson*, 42 Ala. 74; *Ala. & Miss. Railroad Co. v. Sanford & Rice*, 36 Ala. 704; *Ala. Coal Mining Co. v. Brainard*, 35 Ala. 476; *Talladega Ins. Co. v. Landers*, 43 Ala.

2. A corporation is liable for contracts made by its agents, and also upon a promissory note. If a note has been given in a manner not authorized by law, or for an illegal purpose, that must be shown by the defense. The presumption of law is that the note is legal, and the corporation was authorized to make it.—3 Wend. 94; 7 Cowan, 540; 1 ib. 513; 2 ib. 664.

3. If a person assuming to act as agent of a corporation, but without legal authority, make a contract, and the corporation receives the benefit of it and use the property acquired under it, such acts will ratify the contract and render the corporation liable. The defendants must show that they had no power to borrow money under their charter.—1 Pick. 372; 19 Johns. 64.

4. A corporation is bound by the same implications and inferences as a natural person; it may appoint, and such appointment will be inferred by such acts as create a presumption of agency, or by a ratification of his acts. The declarations of the agent in making a contract are evidence, not because he may be a member or an officer of the corporation, but because he is agent.—*Bates & Hines v. Bank of Alabama*, 2 Ala. 451.

5. They are liable upon an implied *assumpsit*, as well as an expressed one.—16 Vermont, 86.

6. If authorized by their charter to contract in a particular mode, they may by practice render themselves liable on instruments executed in a different mode.—*Walter v. Derby, Friley & Co.*, 2 Cowan, 260.

7. This defense of illegal consideration as between plaintiff and defendant, in the language of Lord Mansfield,

" sounds at all times very ill in the mouth of the defend-
ant."—Chitt. on Con. 658. The presumption of law is in
favor of the legality of the contract. If it is susceptible
of two meanings, one legal and the other invalid, that in-
terpretation shall be put on it which will support and give
operation to the contract. It is for the party who takes
the objective to prove it, although the burden is thrown on
him to establish a negative. And the proof should be
positive and clear.—Chitt. on Con. 659.

If, then, the consideration of this contract was not ille-
gal—as the jury under the ruling of the court says it was
not; if the promise to pay the amount was not illegal—
and it is not pretended that it was ; if it was no part of
the contract, and the defendant had no intention or pur-
pose to aid the rebellion, a bare knowledge of the illegal
purpose to which the money was to be applied by the de-
fendant can not vitiate the contract. The consideration,
promise and purpose of the contract being valid, that in-
terpretation shall be put upon the contract that will give
it operation. If the contract, as in this case, is free from
vice, it can not be avoided on the ground that it may prob-
ably facilitate an illegal transaction. If no part of the
consideration or promise was illegal, the contract is not
invalid, although the plaintiff knew the defendant was en-
gaged in an illegal pursuit, and although the agreement
might tend in some degree to facilitate the illegal opera-
tion and business of the company.—*De Groot vs. Van Dusen,*
17 Wend. 170.

PECK, C. J.—1. Under the pleadings in this case, the
note, or copy of which is given in the bill of exceptions,
was properly admitted in evidence, without proof of its
execution. The suit is against the defendant as a corpo-
ration, and the complaint states that the note was made
by the defendant. It is signed thus :

" OXFORD IRON COMPANY,
Per Richard L. Campell, Pres't."

It purports to be the note of the corporation defendant,
made by its agent, the president of the company, and is

the foundation of the suit. There was, therefore, no error in permitting it to be read to the jury without proof of its execution, as its execution was not denied by a plea verified by affidavit.—Rev. Code, § 2682 ; *Ala. Coal Mining Co. v. Brainard*, 35 Ala. 476 ; *Ala. & Miss. Rivers Railroad Co. v. Sanford*, 36 Ala. 703. In the first named of these cases, it is held, that said section 2682 applies not only to cases where the instrument purports, on its face, to be executed by the defendant, his partner, agent, or attorney, but also where the complaint states it to have been so made. This disposes of the three first objections of the defendant to the reading of the note to the jury.

The fourth objection is, that it was not shown that the corporation defendant had the capacity to contract, or that Campbell, the president, had the power to bind it. The latter part of this objection is substantially like the third, and is therefore already disposed of. The other part of the objection, as to the capacity of the defendant to contract, is not well taken.

There are certain powers and capacities incident to every private corporation ; among these is the capacity to sue and be sued, to take and grant property, to contract obligations, and do all other acts, not inconsistent with its charter, *as natural persons may.*—Angell & Ames on Corp., 2d ed., pp. 65–6. These powers may be freely exercised, whenever their exercise is essential to the accomplishment of the objects and purposes for which a corporation is created. An express authority is not required to confer on a corporation the right to draw, indorse, or to accept bills of exchange, or to make or receive promissory notes, provided the exercise of such a power is not obviously foreign to the purposes of its creation.—Angell & Ames, 192–3. And it will be implied, if not expressed, whenever it is directly or indirectly necessary to accomplish the purposes of its charter.

Under our general credit system, and the manner and modes of doing business, the success and prosperity of manufacturing corporations, and other enterprises of like

character, would be greatly impeded and embarrassed, if not utterly destroyed, without the capacity and powers to contract debts, borrow money, and make and receive bills of exchange and promissory notes. Therefore, these powers will be inferred, where there are no prohibitions to the contrary in their charters. The presumption is in favor of the validity of notes made by or to such corporations, and that they are made in the lawful course of their business, until the contrary is proved.—Angell & Ames, 198; *The New York Firem. Ins. Co. v. Sturges*, 2 Cowan, 664.

2. In the case of the *Oxford Iron Company v. Quinchelt*, 44 Ala. 487, we held that " a contract made during the late rebellion, to loan or hire mules to a party known, at the time, to be engaged in the manufacture of iron for the late Confederate government, with a knowledge on the part of the bailor that said mules are wanted by said party, and are borrowed or hired by him to be employed in the manufacture of iron for said Confederate government, to be used by said government for military purposes, in carrying on said rebellion against the United States, is in violation of public policy, and void; and no action can be maintained on the same."

We can see no substantial difference, in principle, between that case and the present. The evidence in this case tends to show that the note sued on was given for money loaned, or for a note that the plaintiff held on one Haralson, which he left the company to collect, and when collected the money was to be used by the company in erecting its iron works, and in making iron for the Confederate government, for military purposes, and to aid it in carrying on the rebellion against the United States, and that this was known to the plaintiff.

The plaintiff was examined as a witness in his own behalf, and among other things, stated that when he went into the employment of the defendant in 1862, he had been informed that the Oxford Iron Company was erecting its own works to make iron for the Confederate government, to be used for military purposes against the United States. He also stated that the note on Haralson was the consid-

eration of the note sued on; that R. L. Campbell told him that the company would take the note on Haralson and collect it, and give the plaintiff the company's note for the amount of said note, and use the money collected on Haralson's note in defraying the expenses of erecting the iron works. This, with the other evidence in the case, we think, tends to show that the note sued on was made upon an illegal consideration, and formed a part of a transaction in violation of public policy. Therefore, the fifth and sixth charges asked by the defendant were proper charges, and should have been given, that the jury might have determined the true character of the entire transaction between the parties.

This defense on the part of the defendant and the persons composing the corporate body, we readily admit, is dishonest, unconscientious and immoral, and is not allowed for its or their sake, but is permitted solely on principles of public policy. If the plaintiff has made an illegal contract with the defendant, the courts can not, without a violation of judicial propriety, help him to enforce it.

3. The question as to the corporate character of the defendant is not properly raised on this record. The plea of *nul tiel* corporation, where a defendant is sued as a corporation aggregate, is an inappropriate plea, and an inconsistency in itself. We find no precedent for such a plea in such a case, nor any case in which it has been pleaded. The appointment of an attorney, and an appearance by him for the defendant, is an admission on the record that the defendant is a corporation; therefore, if the court has been mistaken in any of its charges on this subject, it is an error that does not prejudice the defendant.

For the errors above noticed, let the judgment of the court below be reversed, and the cause remanded at appellee's costs.